## The Commercial National Bank's Appeal from Probate.

Hartford Dist., March T., 1890.   Andrews, C. J., Carpenter, Loomis, Seymour and Torrance, Js.

The insolvent act provides (Gen. Statutes, § 507,) that when a writ of at-
tachment shall have been issued against a debtor upon a claim founded
on contract of one hundred dollars or more, and the officer cannot find
sufficient property to satisfy the attachment, the creditor may petition
the court of probate for the appointment of a trustee to take possession
of the property of the debtor for the benefit of his creditors; the court
being empowered, upon notice to the debtor and upon a hearing had,
to adjudicate the debtor an insolvent, and, upon notice to the creditors,
to appoint a trustee.   Another section (§ 523,) provides that proceed-
ings in insolvency shall dissolve all attachments of the property of the
debtor made within sixty days next preceding.   The probate court hav-
ing, upon such a petition, adjudicated the debtor an insolvent, and
having appointed a trustee of his estate, an attaching creditor, whose
attachment was made within sixty days next preceding the institution
of the insolvency proceedings, appealed from both decrees to the Supe-
rior Court.   Held—

1. That the decree adjudicating the debtor an insolvent was wholly a mat-
   ter between the petitioner and the debtor, and the appellant had no
   right of appeal from the decree.
2. That the appellant had a right of appeal from the decree appointing the
   trustee, and it appearing that the notice to creditors required by the
   statute had not been given, this decree was reversed.

[Argued March 5th—decided April 22d, 1890.]

Appeal from a decree of the court of probate of the dis-
trict of Hartford, adjudicating George M. Bartholomew to
be an insolvent debtor, and ordering that a trustee be ap-

pointed to take possession of his property for the benefit of his creditors, and from another decree appointing the trustee ; taken to the Superior Court in Hartford County.

The Phœnix National Bank, on the 23d of September, 1886, brought its petition to the probate court, alleging that Bartholomew was indebted to the bank in the sum of ten thousand dollars, that a writ of attachment had been issued against him upon the claim, and that the officer serving it had made return that he could find no property, and praying that the court would adjudge him an insolvent debtor and appoint a trustee to take possession of his property for his creditors. This .petition was brought under a provision for it in the insolvent act, Gen. Statutes, § 507.*

---

\* The parts of the insolvent act important to the present case are as follows:—

SEC. 507. When a writ of attachment shall be issued upon a claim founded on contract or judgment, of one hundred dollars or more, upon which writ shall have been indorsed the affidavit of the plaintiff, or his attorney, that he believes such claim to be justly due, and the officer serving the same, after making demand of all such debtors as are found within his precincts, cannot find sufficient property to satisfy said attachment, and shall have made a sworn return upon such writ to that effect; or when any person shall hold a claim against another amounting to one hundred dollars or more which is not due or shall be suspended by proceedings in error or appeal to the Supreme Court of Errors, and since the contracting of such debt or during the pendency of the suit on which such judgment was rendered, such debtor shall have failed in his circumstances; or when any creditor may have a claim amounting to one hundred dollars or more against a non-resident debtor owning property in this state; in either case aforesaid any such creditor may petition the court of probate having jurisdiction, reciting the facts and praying the appointment of a trustee to take possession of the property of such debtor for the benefit of his creditors, and said court shall order notice to be given such debtor to appear before said court and to be heard thereon, at such time as it may appoint; and unless it shall be found by said court that actual notice has been given to said debtor, said hearing shall be adjourned for a reasonable time, and such further notice given as said court may direct; and if, upon hearing, the allegations of said petition shall be found true, and said debtor shall fail to satisfy or secure such claim, in such manner as said court shall deem sufficient, it shall decree said debtor to be insolvent, and appoint a trustee to take possession of, manage, and dispose of all his property, except property exempt from execution, within the jurisdiction of this state, and all such other property as he may voluntarily transfer to such trustee; and all the

The probate court, on the 23d of September, ordered that the foregoing petition should be heard on the 29th day of September, at ten o'clock in the forenoon, and that notice of its pendency and of the time and place of hearing it be given to Bartholomew by reading the petition and order in his presence, or leaving a copy at his usual place of abode in Hartford, at least six days before the day of the hearing. No public notice was given.

On the 29th day of September, at a probate court holden at ten o'clock, and adjourned to eleven o'clock, Bartholomew did not appear, but the court found that a copy of the petition and order had been duly left by the officer at his usual place of abode, and proceeded to hear the petition, and on finding its allegations true, adjudged Bartholomew to be an insolvent debtor; and at the same court, without further notice to creditors, proceeded with the hearing as to the trustee to be appointed, and appointed Charles M. Joslyn of Hartford such trustee. From both these decrees the present appeal was taken on the 24th day of January, 1887.

The Commercial National Bank of Providence, Rhode

property of said debtor owned by him at the time of filing such petition, except as above excepted, shall vest in such trustee.

SEC. 508. Whenever an application shall be made to the court of probate for the appointment of a trustee upon the estate of any debtor, any creditor whose claim amounts to one hundred dollars or more, may, while the proceedings therefor are pending, file his motion in said court to be made a party thereto, alleging under oath that such claim is of the amount aforesaid; and thereafter the original petitioning creditor shall not be allowed to discontinue the proceeding against such estate without the consent of the creditor filing such motion.

SEC. 511. When an assignment for the benefit of creditors shall be made by any debtor, the court shall appoint a time, not exceeding two weeks from the date such assignment is lodged, for approving or appointing a trustee of such estate, and cause public notice thereof, and the name of the person proposed as trustee, to be given, and public notice of the time assigned for the hearing upon any application for the appointment of a trustee of the estate of any debtor, shall also be given. Upon such notice having been given, and hearing had, the court may appoint any person trustee, and may approve or disapprove of any person named in any assignment, but no person shall act as trustee of any estate, or proceed with the settlement thereof, until he shall give a satisfactory probate bond; and the creditors may be heard relative to any such appointment.

Island, the appellant, on the 15th day of September, 1886, brought a suit against Bartholomew on a claim of ten thousand dollars, and attached certain real estate and certain shares of stock in which he had an interest, and about the first day of December of the same year obtained judgment in the suit for $10,150.32 damages and costs. The appellant did not appear in the probate court at the time of the adjudication of insolvency or at that of the appointment of the trustee.

The appellant claimed the right, as an attaching creditor whose attachment would be defeated by insolvency proceedings if sustained, to take an appeal from the decrees adjudicating Bartholomew an insolvent and appointing the trustee, and assigned as the principal reason of appeal the neglect of the officer serving the writ of attachment in favor of the petitioner, to attach sundry equities of redemption in real estate belonging to Bartholomew, which equities were alleged to be of a value more than sufficient to satisfy any judgment that might be recovered by the petitioner. The court (*Fenn, J.,*) sustained this claim and rendered a judgment reversing both the decrees appealed from.

From this judgment the Phœnix National Bank appealed to this court. The case is more fully stated in the opinion.

*H. C. Robinson* and *C. M. Joslyn*, for the appellant.

1. As to the decree adjudicating Bartholomew to be insolvent. The appellant has nothing whatever to do with this decree. In the absence of fraud or collusion a decree of this character does not concern an attaching creditor. Neither the language of the statutes nor the principles underlying them, give an attaching creditor any rights in respect thereto (save in cases of fraud or collusion), except that, if he chooses so to do, he may aid the petitioner in his suit. He has no right to defend against the petition, nor attack it, except for fraud or collusion, and such attack if made, must be by independent process. For such attacks the statutes and the course of law make sufficient provision. Gen. Statutes, §§ 436, 444; *Brewster* v. *Shelton*, 24 Conn.,

141. Section 436 declares a collateral attack upon a probate decree for reasons of fraud to be allowable, and section 444 gives the probate court jurisdiction of just such an application. The last cited section was enacted in 1885, but before that time the law and usages of local jurisprudence had established the practice. We refer to a proceeding brought and contested by most eminent counsel, and recognized by this court in *Brewster* v. *Shelton*, above cited. But in all other respects, we repeat, an attaching creditor has no interest in the decree of insolvency. This is the more apparent from the fact that the statute makes provision for the service of such a petition only on the debtor, and requires an adjournment and further notice if it be found that actual notice was not given him. It is only of the action of the court upon the appointment of a trustee that public notice to the creditor is to be given.

2. As to the decree appointing the trustee. This is a matter of small importance in comparison with the adjudication of insolvency. A reversal of this decree cannot affect the other. The only effect will be to send the matter back to the probate court for the appointment of a trustee; in fact for the re-appointment of the present one, as the counsel for the appellant say they may have no objection to him. The appeal is solely on the ground of a failure to give the notice required by the statute; yet the appellant, through its attorneys here, had full knowledge of the pendency of the matter before the probate court and of the time fixed for the hearing, and could have attended if it had chosen to do so.

*F. Chamberlin* and *J. R. Buck*, for the appellee (original appellant.)

1. The bank, as an attaching creditor, had a right, by appeal, to contest the validity of the insolvency proceedings against Bartholomew. By statute " any person aggrieved by any order, denial or decree of a court of probate in any matter, may appeal therefrom to the Superior Court." Gen. Statutes, § 640 ; *Norton's Appeal from Probate*, 46 Conn.,

527 ; *Buckingham's Appeal from Probate*, 57 id., 544. Argument seems unnecessary to show that the Commercial Bank was aggrieved in a pecuniary sense by the probate decrees appealed from, for the apparent effect of those insolvency proceedings was to dissolve the attachment of the bank, made within sixty days, and to destroy the security it had thereby obtained for its claims in suit against Bartholomew. Any party with an interest entitling him to be heard in the court of probate, must certainly have the right of appeal ; and we may therefore say that this question was decided in *Brewster* v. *Shelton*, 24 Conn., 140, where attaching creditors were held to be so interested that they had a right to contest in the probate court an application for the appointment of a trustee in insolvency. The court there says :—
" The object of Brewster's petition was to have a trustee appointed to take possession of Shelton's property for the benefit of his creditors. The effect of the application, if granted, would be to dissolve their liens acquired by their attachments. They therefore had an interest in the protection of their liens. They accordingly appeared before the court of probate for the purpose of showing that the proceedings of Brewster were commenced and carried on with a fraudulent design to injure them and the creditors of Shelton generally. They therefore had an interest in the subject matter before the court, and had a right to be heard thereon." In *Geery's Appeal from Probate*, 43 Conn., 289, 297, an attaching creditor did appeal from the order of the court of probate appointing a trustee. The case is, therefore, evidence that the court and bar have generally thought attaching creditors to be included within the list of those who might be aggrieved within the meaning of the statute. And in involuntary proceedings in bankruptcy, attaching creditors of the alleged bankrupt have universally been allowed to appear and contest an adjudication. " A petitioning creditor who has filed a petition in another court upon which there has been an adjudication, or a creditor who has received a payment or a transfer which is liable to be assailed as a preference, or who has issued an attachment within the

period of four months next preceding the filing of the petition, may appear and oppose an adjudication, and when allowed to intervene may take advantage of any defence available to the debtor." Bump on Bankruptcy (9th ed.) 50; also p. 451. In fact, involuntary insolvency proceedings are judicially regarded as being of the nature of a proceeding *in rem*, respecting which every person interested in the *res* has a right to intervene and be heard. In *Saunders* v. *Denison*, 20 Conn., 521, a grantee of the deceased under a voluntary deed, good between the parties, but void as to creditors, was held to have such an interest that he could appeal from the doings of the commissioners in regard to a claim, the allowance of which would render the estate insolvent, on the ground that he might protect his title by securing a disallowance of the claim. The Commercial Bank had a right to protect its title under its attachment against Bartholomew by contesting the validity of the insolvency proceedings by appeal.

2. The summary scheme of involuntary insolvency authorized by this statute must be strictly complied with, and the truth of all preliminary conditions clearly proved, or the proceedings will be *ipso facto* void. The process is an arbitrary one, and utterly without justification unless every step pointed out by law has been properly taken. In *Starr* v. *Scott*, 8 Conn., 483, the court say: " Now there is no principle better settled than that when a particular mode of proceeding is pointed out by law, that mode must be strictly pursued, or all the acts done will be invalid." It has been well said by Justice MILLER in reference to the analogous matter of compulsory bankruptcy: " Where a person claims to take from another all control of his property, to arrest him in the exercise of his occupation, and to impair his standing as a business man; in short, to place him in a position which may ruin him in the midst of a prosperous career, the precise circumstances or facts on which he is authorized to do this, should be not only well defined in the law, but clearly established in the courts." *Wilson* v. *City Bank*, 17 Wallace, 482. The same principle is also stated in *Strong*

v. *Strong*, 8 Conn., 412. All probate proceedings where the court is without jurisdiction are *coram non judice*. " It is an acknowledged principle of every court in the world," says an eminent judge, " that not only the decisions, but everything done under judicial process, of a court not having jurisdiction, are, *ipso facto*, void." *Martin* v. *Hunter's Lessee*, 1 Wheat., 364. Now what steps were imperatively required by the statute? They are six in number. (1.) A writ of attachment must be issued. (2.) It must be issued upon a claim founded on contract or judgment of $100 or more. (3.) The affidavit of the plaintiff or his attorney, that he believes such claim to be justly due, must be indorsed upon the writ. (4.) The officer serving the writ must make demand of the debtor, if found within his precincts. (5.) The officer must be unable to find sufficient property to satisfy the attachment. (6.) The officer must make a sworn return upon such writ to that effect. These are essential jurisdictional facts, all of which must exist before the court of probate can act. The petitioner must be sustained by every one of them before he can obtain a decree of insolvency against the debtor, and if the court acts and passes the decree of insolvency when these facts do not all exist, the decree is necessarily void. Here, one of the statutory requirements—an inability on the part of the officer to find sufficient property to secure the attachment—had no existence whatever. It was the duty of the officer to attach real estate if he could find sufficient to satisfy the attachment called for by the writ. He knew the writ had been prepared for the very purpose of putting the defendant into insolvency. He knew the oath that he was to make. He knew that real estate was " property " and was attachable. Before exercising the highest diligence in searching for property, he could not safely or even truthfully swear, in the words of the statute, I " cannot find sufficient property to satisfy the attachment." In his search for property the officer was bound to look to the land records of the town where the defendant had lived all his life and where he was well known to be a large holder of real estate. The record

finds that he owned $85,000 of real estate, about $16,000 of which was unincumbered, and the value of all, beyond mortgages, liens, taxes and prior attachments, was $46,600. The record clearly shows that there was abundant real estate to secure the demand three times over, and that there could have been no difficulty in finding it. Our court has already, in view of these and other controlling considerations, decided this question in accordance with our claim, in *Hawes's Appeal from Probate*, 50 Conn., 317, the head note in which, after reciting the clause of the statute upon which the appellant relies, is as follows :—" Held that the officer serving the writ was bound to attach real estate, if he could find sufficient to satisfy the claim. Also that it made no difference that the real estate was incumbered, so long as the equity of redemption was of sufficient value." The omission to attach land was clearly without any excuse in law.

3. The decree appointing the trustee must clearly be reversed for the failure to give the notice required by the statute before making the appointment. Section 507 provides, in the case of compulsory proceedings like the present, that " unless it shall be found by said court that actual notice has been given to said debtor, said hearing shall be adjourned for a reasonable time, and such further notice given as said court may direct." Here it is found that no actual notice was given the debtor, and the court adjourned for only an hour and ordered no further notice whatever.

TORRANCE, J. The record in this case presents several questions for consideration, the most important of which perhaps is, whether, in the absence of fraud or collusion of any kind, a creditor whose attachment may be dissolved by proceedings brought by another creditor to put the debtor into insolvency, can appeal from the decree of the probate court adjudging the debtor to be an insolvent, and contest on such appeal the allegations of the original petition.

In the case at bar a creditor of one Bartholomew brought such a petition against him to the probate court in the usual form. A time for a hearing on the petition was ap-

pointed and notice ordered to be given to the debtor. On the day appointed for the hearing the court found that actual notice had not been given to the debtor, and thereupon adjourned court for one hour. At the end of that time, the debtor not appearing, the court found that notice to the debtor had been duly given by leaving a copy of the petition and order at his place of abode, heard the petitioner with his witnesses, found the allegations of the petition to be true, and thereupon decreed the debtor to be an insolvent and ordered a trustee of his estate to be appointed.

At the same time, and without having given such previous notice thereof as the law requires, or any notice at all, the court of probate appointed a trustee of Bartholomew's estate, and the trustee at once qualified, and has since proceeded with the settlement of the estate.

Some four months later the Commercial National Bank, one of Bartholomew's creditors, who had a few days prior to the decree of insolvency brought suit against Bartholomew and attached his real estate, having taken judgment in the suit for a little over ten thousand dollars, appeared in the probate court and took an appeal from each of the decrees, and filed in the Superior Court certain reasons of appeal, which set up in substance the following facts:—

1st. The debt mentioned in the original petition was not founded on contract and was not due when the writ mentioned in the petition was issued.

2d. At and during the time the writ was in the hands of the officer who served it, Bartholomew owned property, liable to attachment, sufficient to satisfy the demand of the writ and any judgment that might be obtained thereon, which could easily have been found and attached by the officer, but he made no due and proper search therefor.

3d. That although the probate court found that actual notice of the petition had not been given to Bartholomew, the first hearing thereon, had before the probate court at 10 o'clock in the forenoon of September 29th, 1886, was not adjourned for a reasonable time, nor was any further notice of the pendency of the petition given to Bartholomew be-

fore the second and final hearing thereof in the probate court, to wit, at 11 o'clock in the forenoon of said September 29th, 1886.

4th. That public notice of the time assigned for the hearing upon the application for the appointment of a trustee of the estate of Bartholomew was not given.

To these reasons of appeal the present appellants demurred, upon the ground that the matters alleged therein were matters personal to the debtor only and could be taken advantage of only by him, and because it was apparent from the record that the Commercial National Bank had no such interest in said matters as would entitle it to appeal.

The Superior Court overruled the demurrer, and held on the trial, against the objection of the present appellants, that the Commercial National Bank had such right of appeal, and had the right to prove the facts set up in said reasons of appeal; and thereupon found the allegations of the second, third and fourth reasons of appeal true, and rendered judgment reversing both of the decrees of the court of probate.

So far as the decree appointing the trustee is concerned, we think the court below in reversing it committed no error. The Commercial National Bank as a creditor of Bartholomew had a right to be heard on that matter and of course had a right to notice. The statute requires the court of probate to give notice of the hearing on such a matter, and none whatever was given. Doubtless the peculiar circumstances of the case then known to the court induced it to act in the matter without giving the notice required by law, but this can make no difference with the rights of creditors.

But in holding that the bank had the right to appeal from the decree adjudging Bartholomew to be an insolvent debtor, and the right to contest on such appeal the allegations of the original petition, we think the court erred.

These rights are claimed under section 640 of the General Statutes, which reads as follows:—"Any person aggrieved by any order, denial or decree of a court of probate

in any matter * * *, may appeal therefrom to the Superior Court." It may be conceded that this language considered by itself is broad enough to include an attaching creditor in a case like the present, but the language of the statute in question in a case like the one at bar must be read and interpreted in connection with the provisions of the insolvent law. It will hardly be claimed that a man who is not and cannot by any possibility become a party to a proceeding before the probate court can take an appeal from a decree thereof, even if he is in some way and to some extent harmed thereby.

An appeal from probate ought to be given to those only who are, or may be made or may become in some way, parties before that court, for it is not to be supposed that the law prevents a man from being heard there, and then allows him to appeal and contest elsewhere, at great expense and loss of time, matters which might have been cheaply and expeditiously settled in the probate court. The right to appeal presupposes the right to be heard on the same matter in the probate court.

The statute regulating such appeals contemplates the existence of such a right, for in section 641 it provides that "all such appeals by those of full age and present, or who have legal notice to be present, shall be taken within one month, and if they have no notice to be present and are not present, then within twelve months." And indeed the whole argument of counsel for the bank, in favor of its right to appeal from the decree of insolvency, is based on the assumption that it was, or might have become, a party before the court of probate, with the right to oppose the petition and contest its allegations.

The right then of the Commercial National Bank to appeal from the decree adjudging Bartholomew to be an insolvent, depends on the question whether, in a case like the one at bar, in which there is no fraud or collusion, it had a right to appear and contest the allegations of the petition before the probate court.

It certainly had a right to intervene as a creditor under

the provisions of section 508 of the statute, but it could not be compelled to so intervene. It did not choose to do so however, and so we have perhaps no occasion to consider what its rights would have been under such circumstances. We think however, upon examination of the statutes in relation to insolvency proceedings, and upon consideration of the purpose and object for which such right of intervention is given, that an intervening creditor has no right to contest the allegations of the petition in a case brought in good faith and in the absence of all fraud and collusion on the part of the petitioner and the debtor. A creditor so intervening cannot occupy the position of petitioner and defendant in the same cause at the same time, or appear as petitioner or defendant at pleasure.

But however this may be, we need not consider the matter further, because the right of the Commercial National Bank to appear and contest the allegations of the petition before the probate court is not placed on the ground that it was an intervening creditor, but simply on the ground that it was an attaching creditor, whose lien of attachment was affected by the insolvency proceedings. We think this claim is untenable for several reasons.

In the first place, proceedings in insolvency of the kind in question here, are statutory proceedings. The rights of all the parties thereto are to be ascertained from the provisions of the statute to a large extent. But the statute nowhere in express terms gives such a right as is here claimed to an attaching creditor, nor do we think it is given by implication or otherwise.

If such a right exists in favor of an attaching creditor, it must exist in favor of a preferred creditor whose rights would be affected by proceedings in insolvency, and perhaps in favor of any and all creditors except the petitioning creditor.

And if such creditors are parties defendant, or if by law they have a right to be made so, surely the law ought to provide in some way for notice to them; and yet no such provision is made. The law seems to contemplate the debtor

as the only defendant. He is cited to appear to answer to the petition, and the statute is silent as to all others. There is no way provided for admitting others to become parties defendant, either voluntarily or by compulsion. In the same way the petitioning creditor seems to be regarded as the sole plaintiff so long as he continues to prosecute his petition. Even if other creditors intervene, they remain passive until the petitioner in some way goes out of the case. In certain contingencies the petitioner must pay the probate fees and costs to the defendant debtor. If the debtor appears he may pay or satisfy the petitioner's claim, and then, if no creditor has intervened, the proceedings are at an end, and without regard to the rights of other creditors. The debtor may pay or secure the debt of an intervening creditor also. He may contest the validity of the petitioner's claim, may file an affidavit of defence to the whole or any part thereof, and may make tender of payment of the part admitted to be due and compel the petitioner to give bond before proceeding further.

In short, the proceeding to put a man into insolvency, from the time the writ issues until the decree in insolvency is passed, seems by the statute to be limited entirely to the petitioner and the debtor, with a provision for creditors to intervene in aid of the petition if they choose to do so. We look in vain for any recognition of a right on the part of an attaching creditor or any other creditor to appear as a defendant.

If we consider some of the consequences of admitting such a right, we shall be equally convinced that it does not exist. In the first place, if such creditors have a right to notice, then each creditor, unless he has had notice, can take an appeal any time within twelve months after the decree is passed. It would in most cases be very difficult to ascertain the names and residences of preferred and attaching creditors and other creditors, in order to give them notice, without great delay, and the law has not prescribed that any and if so what notice shall be given. Under such circumstances no trustee would be willing to go on with the settlement of

the estate until the rights of creditors to appeal were barred by lapse of time. If he did so he would be liable to find himself contesting in the Superior Court on appeal the foundation questions that ought to have been settled finally and forever before he was appointed trustee. Then again it would seem, when the probate court has fairly and fully tried and found true the allegations of the petition in a case where the debtor contests them, that if the debtor does not appeal, no one else ought to have the right to contest those questions again before the probate court or elsewhere. Or if the debtor comes into the probate court and admits the truth of the allegations of the petition, or if after due notice he confesses their truth by default, it is difficult to see on what principle creditors should be allowed to contest those allegations again before the probate court or elsewhere. And yet, if the claim of the Commercial National Bank is correct, any attaching creditor may contest these allegations again before the court of probate or on appeal.

If they choose to do so, and the question of insolvency or not is again opened up in the probate court or in the Superior Court, it is difficult to see why the debtor, as the party principally interested, may not again contest the same matters that have once been decided against him after full hearing or after his admission or default. We do not think the insolvent law contemplates or permits such results.

When we consider the purpose and object of the insolvent law, we are led to the same conclusion. Its main purpose and object is to distribute the estate of the insolvent debtor fairly among his creditors according to the amount of their respective claims. To accomplish this purpose it defeats all attachments and all preferences made within sixty days of the commencement of insolvency proceedings. Whether this purpose is accomplished through voluntary or involuntary proceedings is usually a matter of no consequence to any one save the debtor ; for in either case, if the debtor is not in fact insolvent, no creditor is harmed, because he gets his claim in full, and if the debtor is in fact insolvent, then each creditor gets all the law intended he should get, namely, his

fair proportion of the insolvent estate. And the law will not defeat its own purpose by aiding a creditor to get more than this at the expense of other creditors in a case where the aid of the insolvent law is invoked.

Then again, all the safeguards and requirements of the law in this matter of involuntary insolvency seem to be made for the protection of the debtor himself, and not for the benefit of attaching or preferred creditors. If the debtor in good faith and in aid of the policy of the insolvent law sees fit to waive any safeguard or requirement made for his benefit, and allows himself to be put into insolvency, who is harmed save himself? He is the one vitally interested in the proceedings, and ample opportunity is given him to contest the allegations of the petition, both in the court of probate and in the appellate court. *Hawes's Appeal from Probate*, 50 Conn., 317.

The debtor may by a voluntary assignment defeat all attachments and preferences made within sixty days preceding, and such creditors have no remedy. Why should they have a remedy if the debtor, acting in good faith, chooses to admit the allegations of the petition either expressly in open court or by his default and thus brings about the same result as he would by his voluntary assignment?

To allow a creditor the same right that the debtor has in such cases, is to introduce confusion and uncertainty into the insolvent law, and to render its administration vexatious, expensive and full of delay, and all to enable a creditor to defeat the main purpose and object of that law. We are satisfied that no such right exists.

The case of *Brewster* v. *Shelton*, 24 Conn., 140, cited in the briefs, is not in conflict with the conclusion reached in the present case. In that case the very object of the proceedings was the injury of certain creditors by a fraud perpetrated under the forms and sanction of the law itself. It was a proceeding brought to defeat the very purpose of the insolvent law and not to aid in accomplishing that purpose. In such a case we think an attaching creditor would be enti-

tled to protect his rights and would be afforded ample opportunity to do so.

The case of *Geery's Appeal from Probate*, 43 Conn., 289, cited on the brief of the appellee, is hardly in point, because that was, under the then statute, in form at least, an appeal from a decree or order appointing a trustee, and besides, the question made here was not raised, nor does it seem to have been called to the attention of the court in any way.

For the reasons before given, we think the court below erred in reversing the decree of the court of probate adjudging Bartholomew to be an insolvent, and the judgment of the court is to that extent reversed.

In this opinion the other judges concurred.